IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:24-CR-273 |
| ) | |
| ) | |
| MILES BRANDON ADKINS ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S POSITION ON SENTENCING

Defendant Miles Adkins, through counsel, respectfully submits the following Position on Sentencing. No PSR has been ordered, and because Mr. Adkins has pled guilty to misdemeanor offenses, the sentencing guidelines are not applicable.

Despite the seriousness of the events of January 6th and Mr. Adkins actions, there are ample reasons for the Court to impose a probationary sentence in this matter. While the acts of many of the January 6th participants were violent and destructive, Mr. Adkins' offenses, although certainly criminal, were peaceful in nature. Based on the factors set forth below, Mr. Adkins respectfully requests that the Court impose a sentence of one year of probation—a sentence that is "sufficient but not greater than necessary" to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## BACKGROUND

As more time separates us from the events of January 6, 2021, it becomes more difficult to recall the fervor with which 74 million voters were insistently told by President Trump and his supporters that a United States Presidential election was stolen from the rightful winner. On January 6, these voters turned out in the thousands to hear their President urge them to march on the Capitol building to show their disapproval and encourage their elected officials to reject the

results. "We're going to walk down to the Capitol, and we're going to cheer on our brave senators, and congressmen and women," Trump told his supporters shortly before the Capitol assault. "We're probably not going to be cheering so much for some of them because you'll never take back our country with weakness. You have to show strength, and you have to be strong." Trump told them. And they listened.

Miles Adkins was among the crowd who marched from President Trump's speech to the U.S. Capitol. He was surrounded by those who believed as he did, that there were voting irregularities in the election, and that Congress should take some time to investigate. Yet unlike many others who participated in the January 6th riot, Mr. Adkins had no more sinister an agenda than to participate in a peaceful protest and have his voice heard by his elected officials. He was unarmed. He did not force his way into the Capitol. He had no physical contact with law enforcement. The spectrum of behavior demonstrated by the January 6 participants is wide, and Mr. Adkins' activities fall closer to the reckless rather than malicious end. Based on the foregoing, the § 3553 factors support a probationary sentence, and we request that the Court impose such a sentence.

## DISCUSSION

### I.  THE POST-*BOOKER* SENTENCING FRAMEWORK

Under Section 3552, sentencing courts are "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38, 53 (2007) (quoting Koon v. United States, 518 U.S. 81 (1996)). Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in *Booker* – sentencing courts should consider the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>  (B)   to afford adequate deterrence to criminal conduct;
>
>  (C)   to protect the public from further crimes of the defendant; and
>
>  (D)   to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above. Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

> Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the *Booker* majority:
> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Against this backdrop of factors, Mr. Adkins submits the appropriate sentence is a term of probation.

## II. A SENTENCE OF PROBATION IS REASONABLE AND APPROPRIATE AND WARRANTED BY THE SECTION 3553 FACTORS.

A violation of 40 U.S.C. § 5104(e)(2)(D) carries a maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a term of probation of not more than five (5) years, pursuant to 18 U.S.C. § 3561(c); a fine of not more than $5,000, pursuant to 18 U.S.C. §

3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

A violation of 40 U.S.C. § 5104(e)(2)(G) carries an additional maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a term of probation of not more than five (5) years, pursuant to 18 U.S.C. § 3561(c); a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. Based on the 3553 factors, a sentence of probation is justified.

  A. <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.</u>

In accordance with 18 U.S.C. 3553(a)(1), courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," when imposing sentence. These factors indicate that a probationary sentence is appropriate for Mr. Adkins.

  *1.* *Mr. Adkins's History, Background and Character*

Mr. Adkins considers himself a patriot, and like many of his generation, was greatly influenced by the events of 9/11. As a high school student, Mr. Adkins had planned to go on to college and pursue a degree in electrical engineering. After watching the towers come down, however, Mr. Adkins' priorities changed. After graduation, while tempted by partial college scholarships, Mr. Adkins chose the Marines.

After finishing bootcamp, Mr. Adkins completed avionics training and was certified to work on military aircraft. Mr. Adkins served four years in the Marine Corp, including two years in Iraq in 2005-2006. During his time in Iraq, Mr. Adkins was injured when a heavy aircraft part fell on his back. He completed his tour and was Honorably discharged, but his injury followed him into civilian life, along with symptoms of PTSD.

After his discharge in 2008, Mr. Adkins returned to a country reeling from recent financial collapse. Nevertheless, Mr. Adkins found work in the aviation industry, married his long-term girlfriend, and attempted to start a family. After losing two babies to genetic defects, Mr. Adkins and his wife welcomed a healthy child. However, still hampered by his back injury and a scarcity of steady employment, Mr. Adkins began self-medicating with alcohol and prescription pain pills. Mr. Adkins' addiction cost him jobs, and eventually his marriage.

During his divorce, while close to rock bottom, Mr. Adkins checked himself into a drug rehabilitation program through the VA in Dayton, Ohio. After failing to complete the program, Mr. Adkins moved into a homeless shelter in Charleston, South Carolina. While there, he attended a VA outpatient program, mental health counseling, and a physical therapy program. Most importantly, Mr. Adkins connected with other veterans through the Warrior Surf Foundation. Founded by American Combat Veterans and surfers in Folly Beach, SC, Warrior Surf Foundation addresses post-service transition challenges such as PTSD, moral injury, survivor's guilt, and Traumatic Brain Injuries through surf therapy, yoga, wellness sessions, and community.

While working on his addiction recovery, the Warrior Surf Foundation connected Mr. Adkins with other veterans who helped him retain employment, find positive influences, and secure stable housing.  During this time Mr. Adkins used his G.I. Bill benefit to take classes in substance abuse counseling with a focus on PTSD. He was the first intern for the Warrior Surf Foundation, working with veterans needing to transition to civilian life. His work there led him to enroll in an undergraduate program and the completion of a Bachelor's degree.

Mr. Adkins continues to give back to his community. In 2021, he was elected to the Frederick County School Board, where he demonstrates his passion for education and the

shaping of young minds. Frederick County resident Dana Brun, describes Mr. Adkins as "courteous" and a "great guy," who "always shows up, has great insight" and is "always there with ideas and recommendations to better the future of our children." (Exhibit 2).

It is difficult to reconcile Mr. Adkins' participation in the January 6 riot with the positive impact he has had on his family and community, and it is tempting to define him by his worst, rather than his best acts. Nevertheless, Mr. Adkins' service to his country and continued service to his community support a probationary sentence.

    *2.*    *The Nature and Circumstances of Mr. Adkins' Role in the Offense*

Mr. Adkins has acknowledged guilt and accepts responsibility before this Court. His criminal conduct is concisely described in the statement of facts and Mr. Adkins does not dispute these facts. Mr. Adkins spoke with the FBI on multiple occasions and admits his wrongdoing in the Capitol breech.

On January 6th, Mr. Adkins drove into the District to hear President Trump's speech. Although he missed the speech itself, he joined the massive crowd heading towards the Capitol. Once there, he entered with the crowd and wandered around. At no time did he damage any property or physically engage with any police officers. His most egregious behavior while in the Capitol appears to be drinking beer. Mr. Adkins' actions certainly do not demonstrate good judgment, but neither do they demonstrate any malicious intent.

    **B.**    **The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

One of the most puzzling aspects of the January 6 riot is that it brought together mostly ordinary, previously law-abiding citizens, who temporarily lost all reason and good sense. While some of the riot participants were members of various groups who arrived in D.C. with plans to cause criminal mischief, many more, like Mr. Adkins, came to the District with no nefarious

intentions. January 6 was a singular event with few precedents by which to guide the Court. As such, the normal calculations of deterrence and community protection do not necessarily apply in the same manner as other criminal sentencings. Nevertheless, the Court is tasked with fashioning a sentence that deters others from engaging in future rioting and protects future potential victims from Mr. Adkins. A sentence of probation accomplishes both goals.

   *1. Deterrence*

Due to Mr. Adkins' public role on the school board, his arrest and prosecution for his role in the January 6th event has subjected him to very public criticism from his political opponents. While Mr. Adkins is unapologetic about his political views, the spotlight caused by his case has taken an emotional toll. It is true that a sentence without active jail time may not deter those predisposed to political violence. But Mr. Adkins is not in that group, and the distinction is significant. The court has already handed down lengthy prison sentences to those who directly engaged in violence against law enforcement officers or who conspired to lead the January 6 mob. But for those, like Mr. Adkins, who chose to express their political anger through protest, a federal conviction is more than adequate to prevent future protesters from crossing the line into illegal activity. For the non-violent, a sentence of probation will represent an adequate deterrence.

   *2. Protecting the Public*

Regardless of the sentence imposed by the Court, there is little reason to believe that Mr. Adkins is a future threat to the public. The circumstances that led Mr. Adkins to enter the U.S. Capitol on January 6th were unique to that place and time. Like many others, Mr. Adkins was swept up in the momentum of the mob, many of whom believed they were acting patriotically by protesting a corrupt presidential election. While Mr. Adkins, at the time, may have believed he was on the side of God and Country, hindsight has since disabused him of that notion. With the

perspective offered by the passage of more than four years, Mr. Adkins recognizes the magnitude of his error and greatly regrets his involvement. Based on the unlikeliness of Mr. Adkins reoffending, a sentence of probation would be a sufficient sentence that is not "greater than necessary."

### c. The Need to Avoid Unwarranted Sentencing Disparities.

In fashioning an appropriate sentence, sentencing courts are to consider "the need to avoid unwarranted sentencing disparities among defendants of similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). There are numerous sentences for which Mr. Adkins can point to support his contention that similar conduct has been punished without the necessity of incarceration. Suffice it to say that there have been a substantial number of defendants similarly or identically charged and situated to Mr. Adkins who received probationary sentences.

While the circumstances of each January 6 defendants' cases differ from each other, the case of *United States v. Thomas Pooler*, 24-cr-75 is a reasonable guide. There, Mr. Pooler was charged with identical misdemeanors to Mr. Adkins, after entering the Capitol at 2:26 pm—11 minutes later than Mr. Adkins. Like Mr. Adkins, Mr. Pooler was unarmed and engaged in no violence or destruction of property while in the Capitol for approximately 31 minutes. Mr. Pooler was sentenced by this Court to 12 months of probation. Although Mr. Pooler spent a shorter length of time in the Capitol than Mr. Adkins, it is the peaceful nature of the two defendants' participation in the events of January 6th that is the more relevant comparison.

The non-violent nature of Mr. Adkins' conduct separates him from the January 6th defendants who have received lengthy prison sentences, and places him in a category of defendants for whom incarceration would be greater than necessary to satisfy the goals of federal sentencing. A sentence of incarceration for Mr. Adkins would be at the most severe end of the

sentencing spectrum for the behavior exhibited and the nature and extent of the charges he now faces. As a result, Mr. Adkins contends that a sentence of probation would be entirely appropriate for his conduct. Mr. Adkins' lack of a significant criminal history, his service to his country and community, and his cooperation with law enforcement, further support a sentence of probation.

## **CONCLUSION**

For the reasons discussed above, a sentence of probation is reasonable and appropriate. Such a sentence sufficiently addresses Mr. Adkins' conduct as well as other factors pursuant to 18 U.S.C. § 3553(a).  Based on Mr. Adkins's role in the offense, his life history, and contributions to the lives of his friends and family,  a sentence of active incarceration would be greater than necessary.  Accordingly, Mr. Adkins respectfully requests that the Court impose a sentence of one year of probation and whatever other conditions the Court deems appropriate

Respectfully Submitted,

MONUMENT LEGAL

BY:

_____/s/_____
Jay P. Mykytiuk [Bar No: 976596]
*Counsel for Miles Adkins*
1100 H Street NW Suite 1010
Washington, DC 20005
jpm@monumentlegal.com
Ph: 202-630-1522

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June 2024, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system, which system I understand has provided electronic notice counsel of record.

*/s/ Jay P. Mykytiuk*
Jay P. Mykytiuk
